**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DON WAYNE McDANIEL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **No. 05 C 1008** |
| | ) | |
| **QWEST COMMUNICATIONS CORPORATION,** | ) | **Rebecca R. Pallmeyer** |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

In this action, fourteen landowners in ten states have sued four telecommunications companies for trespass and unlawful enrichment based on the installation and operation of fiber optic cables in railroad rights-of-way that cross or are adjacent to the Plaintiffs' properties. In addition to prosecuting their own claims, Plaintiffs ask this court to certify a ten-subclass, six-issue class of all present and former owners of land in the ten states at issue, adjacent to or underlying a railroad right-of-way in which Defendants have installed or operate fiber optic cable. Defendants oppose this motion and further move that all non-Illinois Plaintiffs be dropped. For the reasons explained here, the court denies Plaintiffs' motion for class certification and grants Defendants' motion to drop parties.

## BACKGROUND

Before addressing the parties' arguments, the court takes a moment to describe the events that generate their dispute. More than a century ago, railroad companies seeking land for their rail lines initially acquired much of that land through government land grants or condemnation. Jeffery M. Heftman, *Railroad Right-of-Way Easements, Utility Apportionments, and Shifting Technological Realities*, 2002 U. ILL. L. REV. 1401, 1406. Subject to the language used in the particular legislative act at issue, railroad companies usually owned the right-of-way acquired with government assistance outright. *See, e.g.*, *Missouri, Kan. & Tex. Ry. Co. v. Roberts*, 152 U.S. 114, 118 (1894) (finding that an act of Congress of July 26, 1866 granted the land in dispute to the

defendant railroad in fee simple).

With the General Right of Way Grant of 1875, Congress ceased granting railroad companies condemnation authority; as a result, further expansion of the rail line network would require private negotiation between the railroad companies and individual landowners along the rail corridor. Heftman, 2002 U. ILL. L. REV. at 1406-07. These negotiations, and the property interests they created, were memorialized in a myriad of deeds, often containing non-uniform language. *Id.* Depending upon the particular language used in the particular deed as interpreted under a particular state's law, these private transactions might result in the railroad company's taking a fee simple or a more limited estate, such as an easement. *Compare Miller v. United States*, 67 Fed. Cl. 542, 547 (Fed. Cl. 2005) (finding under Missouri law that the language used in a deed that conveyed the property underlying a roadway gave the railroad company a fee simple interest) *with Shroeder v. United States*, 66 Fed. Cl. 508, 510 (Fed. Cl. 2005) (certifying the question of whether under Washington law, language used in a deed might have conveyed only an easement to the railroad company). While the holder of a fee simple may use property in any way he or she pleases, an easement entitles its holder to use land only for limited purposes. BLACK'S LAW DICTIONARY 509 (West 6th ed. 1990).

In the late nineteenth century, network-oriented businesses, beginning with telegraph and telephone companies, and eventually, the telecommunications firms involved in this matter, began building the physical infrastructure of their networks. *See* Heftman, 2002 U. ILL. L. REV. at 1401. These businesses often leased access to the railroad companies' existing rights-of-way, paying the railroad companies for the right to erect telegraph poles, string telephone wires, or bury fiber optic cables. *Id.* at 1410-11. In recent years, however, landowners neighboring or underlying railroad rights-of-way that have been leased for non-railroad purposes have sued on the theory that the installation and operation of a fiber optic cable network, for instance, exceeds the scope of the property interest conveyed to the railroad companies by the landowners' predecessors.

Landowners argue that the installation and operation of the networks is a trespass, and that unless the telecommunication companies wish to remove the cables, the landowners are entitled to some share of the lease or operating revenues. The instant action is of this nature.

In seeking class certification, Plaintiffs here face an uphill battle: Federal trial courts have routinely denied these suits class status because the trespass theory and the derivative theory of unjust enrichment require highly individuated inquiry as to the relative property interests of each putative class member vis-a-vis the defendant railroad or telecommunications company. *Cf. Peeler v. MCI, Inc.*, No. 01-3019, __ F.3d __, 2006 WL 1215195, *2 (7th Cir. May 8, 2006). As this inquiry must be made on a parcel-by-parcel basis along the entire length of the disputed right-of-way, the class becomes unmanageable. *See, e.g.*, *Smith v. Sprint Communications Co.*, 387 F.3d 612 (7th Cir. 2004) (denying certification of a nationwide settlement class between railroad right-of-way lessees and neighboring landowners); *Isaacs v. Sprint Corp.*, 261 F.3d 679 (7th Cir. 2001) (denying certification of a nationwide litigation class between railroad right-of-way lessees and neighboring landowners). Plaintiffs attempt to distinguish these controlling cases, proposing subclasses drawn along state lines and identifying particular common issues.[1] As explained below, however, the court concludes that these efforts have been unsuccessful.

### FACTS

The allegations of the Plaintiffs' complaint, presumed true for purposes of this opinion, are as follows:

---

[1]     Neither the court, nor any party, has actually found a case to date in which a federal court certified a litigation class of landowners against a railroad company and/or its right-of-way lessees for trespass. The closest case on the facts is the certification of a class of servient landowners in two states against a utility company and the telecommunications company to which it leased its excess fiber optic capacity. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201 (E.D. Va. 2003). Federal courts have also certified class actions on a multi-county or statewide level in takings cases arising under the National Trails System ("Rails-to-Trails") Act, 16 U.S.C. § 1241, *et seq. See, e.g.*, *Schmitt v. United States*, 203 F.R.D. 387 (S.D. Ind. 2001); *Bywaters v. United States*, 196 F.R.D. 458 (E.D. Tex. 2000); *Schneider v. United States*, 197 F.R.D. 397 (D. Neb. 2000). The court discusses these cases in greater detail below.

## I.    Parties

Defendant Qwest Communications Corp. (hereinafter, "Qwest,") is a Delaware corporation with its principal place of business in Colorado. (Compl. ¶ 6.)  Defendant Sprint Communications Co., L.P. (hereinafter, "Sprint,") is a Delaware limited partnership with its principal place of business in Kansas. (*Id.* at ¶ 7.)  Defendant Level 3 Communications, L.L.C. (hereinafter, "Level 3,") is a Delaware limited liability company with its principal place of business in Colorado. (*Id.* at ¶ 8.)  Defendant WilTel Communications, L.L.C. (f/k/a Williams Communications, LLC; hereinafter, "WilTel,") is a Delaware limited liability company with its principal place of business in Oklahoma.[2] (*Id.* at ¶ 9.)  Plaintiffs allege that all four Defendants provide telecommunications services throughout the United States, and that Defendants (or their predecessors in interest) created, operated, and leased fiber optic cables that run through the lands owned by Plaintiffs and members of the class they seek to represent. (*Id.* at ¶¶ 6-9.)

Named Plaintiffs, citizens of ten different states, own real estate in their states of residence across which a portion of one or more of the Defendants' fiber optic cable runs. (*Id.* at ¶ 5.)  Plaintiff Don Wayne McDaniel and Plaintiffs Mary and E.J. Driskill are citizens of Arkansas. (*Id.* at ¶ 5(a)-(b).)  Plaintiff Todd Smith is a citizen of California. (*Id.* at ¶ 5(c).)  Plaintiff Daniel McKenzie is a citizen of Florida. (*Id.* at ¶ 5(d).)  Plaintiffs Randy C. and Diane J. Snyder are citizens of Illinois. (*Id.* at ¶ 5(e).)  Plaintiff Robert J. Snyder is a citizen of Indiana. (*Id.* at ¶ 5(f).)  Plaintiff Patricia Ann Polston is a citizen of Missouri. (*Id.* at ¶ 5(g).)  Plaintiffs Elizabeth Ware and John Butcher are citizens of Nevada. (*Id.* at ¶ 5(h)-(I).)  Plaintiff Wendell C. Hull is a citizen of New

---

[2]    Plaintiffs have failed to allege the identity or citizenship of each member of the limited liability corporations and limited partnerships party to this action. It is well settled that "[u]nincorporated enterprises are analogized to partnerships, which take the citizenship of every general and limited partner." *Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990)). Where federal jurisdiction rests on the complete diversity of the parties, failure to determine the citizenship of the parties creates the risk that the district court will expend its resources to arrive at a judgment only to discover that it had no authority to adjudicate the matter in the first place. *Belleville Catering*, 350 F.3d at 693. The court expects the parties to address this matter promptly.

Mexico.  (*Id.* at ¶ 5(j).)  Plaintiff Flynn Ranch of Townsend, Inc. is a Montana corporation (its principal place of business is not alleged).  (*Id.* at ¶ 5(k).)  Plaintiff Billings Memorial, L.L.C., is an Oregon limited liability company.  (*Id.* at ¶ 5(l).)  Plaintiffs have not identified Billings Memorial's members; as noted above, they must do so in order to satisfy the court that it has jurisdiction.

## II.    The Allegations

Plaintiffs allege that "[a]t a period presently unknown but believed to be the late 1980's," Defendants installed some 16,420 linear miles[3] of fiber optic cable in land owned by members of the putative class (set out in the section below).  (Compl. ¶ 15; Plaintiffs' Motion for Class Certification on Limited Issues Pursuant to Rules 23(C)(4), (B)(1)(A) and (B)(3), FED. R. CIV. P. (hereinafter, "Pltfs.' Class Mem."), p. 9.)  Plaintiffs allege that Defendants installed the cables without the permission or knowledge of putative class members, and did not seek the approval of or pay any compensation to those members since that installation.  (Compl. ¶ 15.)  According to Plaintiffs, Defendants are without easements or any other lawful right to enter the class members' lands to install, maintain, and operate fiber optic cable; Defendants knew they had no authority; Defendants concealed their entry from the members; and Defendants continue their occupation at the time of this suit.  (*Id.* at ¶¶ 16-18, 24.)

As the court understands the record, Defendants would readily admit that they did not obtain permission from, and have not paid, the putative class members for the right to install fiber optic cable on their lands.[4]  According to Defendants, they have not installed fiber optic cable in land

---

[3]    This total figure represents some 348.34 linear miles in Arkansas, 1,235.54 linear miles in Arizona, 4,132.56 linear miles in California, 2,252.21 linear miles in Florida, 946.06 in Illinois, 599.01 linear miles in Indiana, 761.51 linear miles in Missouri, 760.23 linear miles in Montana, 2,589.94 linear miles in New Mexico, 957.72 linear miles in Nevada, and 603.95 linear miles in Oregon. (Pltfs.' Class Mem., p. 10 n.6.)

[4]    Although the Supreme Court in *Eisen v. Carlisle & Jacquelin* cautioned courts not to consider the merits of the plaintiff's case in deciding whether the case can be maintained as a class action, 417 U.S. 156, 177-78 (1974), a court is not prohibited from looking past the pleadings to determine whether the requirements of FED. R. CIV. P. 23 have been met. *See, e.g.*, *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough (continued...)

owned by any class member, but rather installed the cables in the rights-of-way owned by various railroad companies whose permission Defendants did receive and to whom Defendants have paid compensation. (Reply Memorandum in Support of Defendants' Motion to Deny Class Certification and Opposing Plaintiffs' Motion for Class Certification (hereinafter, "Defs.' Class Reply,") p. 32.) These rights-of-way consist of a myriad of parcels in the ten states involved in this case. The railroads own some of these rights-of-way in fee simple; others are easements created by deeds of conveyance from the federal and state governments as well as private parties. (*Id.* at 8-9.)

## **PROCEDURAL HISTORY**

On February 18, 2005, Plaintiffs filed this suit for "continuing" trespass and unjust enrichment against Defendants under this court's diversity jurisdiction. On June 29, 2005, invoking FED. R. CIV. P. 23(b)(1)(A) or 23(b)(3), Plaintiffs moved for certification of a class defined as:

> All present and former owners of land in the states of Arkansas, California, Florida, Illinois, Missouri, Montana, Nevada, New Mexico, and Oregon adjacent to or underlying a railroad right-of-way on which [D]efendants have installed and operated fiber optic cable, excluding the United States of America, the [D]efendants and any of their predecessors and affiliates, and any railroad.

(Plaintiffs' Motion for Class Certification on Limited Issues (hereinafter, "Pltfs.' Class Mot."), p. 1.) Rather than certifying the entire case (or even an individual cause of action) for class treatment, Plaintiffs, invoking Rule 23(c)(4)(A), seek class treatment for six issues:

> (1) Whether Defendants have [entered] and continue to intentionally enter upon lands burdened by railroad rights-of-way by installing, operating, and maintaining fiber optic cable on the land without authority;
>
> (2) Whether Defendants have any legal privilege allowing them to intentionally enter upon, remain, or use the lands;

---

[4](...continued)
from the pleadings . . . and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."). While Defendants have yet to file an answer to Plaintiffs' complaint, the court has attempted to glean the Defendants' version of the facts from their briefs because of the importance of potential disputes in determining what common and individual factual and legal issues might arise at trial. The court does not consider these matters in any way as a premature assessment of the strength of Plaintiffs' case.

(3)     Whether Defendants profited and continue to profit from their continuing use of fiber optic cable for telecommunications system, which crosses the lands burdened by railroad rights-of-way;

(4)     The time period within which any putative subclass member may bring actions for continuing trespass or quasi-contract/unjust enrichment under the laws of their respective states;

(5)     Whether defendants are liable to any members of each subclass for actual damages and punitive damages for continuing trespass or quasi-contract/unjust enrichment under the laws of their respective states;

(6)     The unitary measure of damages, if any, payable to any members of each landsubclass for continuing trespass or quasi-contract/unjust enrichment under the laws of their respective states.

(*Id.* at 2-3.)  Pursuant to Rule 23(c)(4)(B), Plaintiffs request that the court certify ten subclasses so that these issues may be adjudicated according to the law of each state in which putative class members own property.  That is to say, Plaintiffs McDaniel and the Driskells would represent a subclass of Arkansas landowners; Plaintiff Smith would represent a subclass of California landowners; Plaintiff McKenzie would represent a subclass of Florida landowners.[5]  (*Id.* at 2.)

 In this lawsuit, Plaintiffs seek compensatory damages in excess of $75,000 for each Plaintiff class member, plus punitive damages, fees, and costs.  (Compl. ¶¶ 28-29, 31.)  Plaintiffs also request "[t]hat [D]efendants be preliminarily and permanently enjoined from trespassing upon the lands of [P]laintiffs and members of the [P]laintiff Class to use and maintain their fiber optic cables."  (*Id.* at 30.)

Prior to Plaintiffs' motion for class certification, on April 19, 2005, Defendants moved to dismiss all non-Illinois named Plaintiffs for lack of subject matter jurisdiction or improper venue under the local action doctrine.[6]  On May 26, 2005, Defendants moved to drop these same parties

---

[5]     On May 27, 2005, prior to Plaintiffs' motion for certification, Defendants filed a motion to deny certification of a class defined as Plaintiffs' Illinois subclass. (Defs.' Class Mot., p. 1). Because Plaintiffs actually seek certification of a broader class, the court denies Defendants' motion as moot, but will address here the arguments Defendants made in that motion to the extent they remain relevant.

[6]     The local action doctrine traditionally requires that lawsuits "which directly affect real
(continued...)

under FED. R. CIV. P. 21.  The court will address the latter motion along with Plaintiffs' motion for class certification here.

## DISCUSSION

The court may certify a class action only where doing so would comply with both Rule 23(a) and at least one subsection of Rule 23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  The prerequisites for all class actions are: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy ("the representative parties will fairly and adequately protect the interests of the class").  FED. R. CIV. P. 23(a).  In addition, the court will not certify the class at issue in this case without a showing that one of the Rule 23(b) tests is met.  Plaintiffs here contend that "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class," FED. R. CIV. P. 23(b)(1)(A), or that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy," FED. R. CIV. P. 23(b)(3).[7]  "[T]he party seeking class certification assumes the burden of demonstrating that certification is appropriate."  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).  Where the moving party seeks certification of subclasses, the Seventh Circuit requires that each of the subclasses meet the requirements for certification set out

---

(...continued)
property" "be brought in the district in which the real property is located." *Raphael J. Musicus, Inc. v. Safeway Stores, Inc.*, 743 F.3d 503, 505-06 (7th Cir. 1984).

[7]       A class may also be certified under Rule 23(b)(2) when plaintiff would be entitled primarily to injunctive or declaratory relief. Although Plaintiffs' complaint indicated that they might move for class certification under Rule 23(b)(2), (Compl. ¶ 12), Plaintiffs, in fact, actually moved for certification exclusively on the basis of Rules 23(b)(1)(A) and 23(b)(3). (Pltfs.' Class Mot., p. 1.)

in Rule 23(a) and (b). *Id.*

In seeking class certification, Plaintiffs here face a significant challenge: The Seventh Circuit has twice rejected broad class treatment for this property dispute in the past. Specifically, in *Isaacs v. Sprint Corp.*, the district court had certified one nationwide class of landowners adjacent to rights-of-way obtained by condemnation and another nationwide class of landowners adjacent to rights-of-way obtained by grants of public lands to the railroads. 261 F.3d 679, 681 (7th Cir. 2001). The Seventh Circuit reversed, noting that the trial court failed to make any determination that either of the classes satisfied requirements of Rule 23. *Id.* at 681-82. Had the district court fulfilled its obligation under the Federal Rules of Civil Procedure, Judge Posner observed that it would have discovered that neither class could be certified for litigation because the multiplicity of laws applicable to the interpretation of each party's interest in the disputed rights-of-way precluded a finding of predominance. *Id.* at 682.

Three years later, when some of the same parties sought certification of a nationwide settlement class, landowners in Kansas and Tennessee who represented statewide classes in their respective state courts intervened to object, and the Seventh Circuit sustained the objection on the grounds that the named plaintiffs in the proposed nationwide class were inadequate representatives. *Smith v. Sprint Communications Co.*, 387 F.3d 612, 614-15 (7th Cir. 2004). The *Smith* majority appeared to read *Isaacs* as a categorical prohibition on certification of a nationwide class of landowners for litigation. *See id.* at 617 (Cudahy, J., dissenting). The *Smith* court noted that settling plaintiffs who cannot credibly threaten litigation could not adequately represent landowners in states where class-based litigation remains a viable alternative to settlement. *See id.* at 615.

Plaintiffs here attempt to steer a course around the obstacles posed by *Isaacs* and *Smith*. Their request for certification is limited to a handful of states and issues. Plaintiffs also argue that, having agreed to a settlement class in *Smith*, Defendants are estopped from opposing certification

of a litigation class here, and that the proposed class and subclasses meet Rule 23 requirements.

## A.    Estoppel

Before addressing the certification requirements, the court turns to Plaintiffs' contention that Defendants are estopped from contesting the propriety of class certification.  (Pltfs.' Class Mem., pp. 1-3.)  The court notes, first, that Defendants' acquiescence is not sufficient to support class certification.  Under Rule 23, the trial court must be satisfied that a class action is appropriate even where the party facing the putative class cannot argue against it, or in the absence of estoppel, simply does not argue against it because the motion for certification is unopposed.  *See Smith v. Sprint Communications Co.*, 387 F.3d 612, 614 (7th Cir. 2004) (admonishing a district court to ensure that the formalities of Rule 23 are met even when all parties to the case agree to the class treatment).

Plaintiffs, however, note that Defendants, also the defendants in *Smith*, had asked Judge Andersen of this court to certify a nationwide settlement class, a class far broader than the ten-state litigation class Plaintiffs request here.  In *Carnegie v. Household Int'l, Inc.*, Judge Posner held that a defendant who had previously agreed to a global settlement class that the trial court certified only to have decertified on appeal was estopped from challenging the adequacy of the class, "at least as a settlement class."  376 F.3d 656, 659-60 (7th Cir. 2004).  Under the rule in *Carnegie*, Defendants, who previously agreed to a broad settlement class,  would presumably be estopped from arguing in this action that a similar settlement class was inappropriate.  Plaintiffs here, however, are asking for the certification of a litigation class that Defendants have never argued was certifiable under Rule 23, in this or any other litigation that has been brought to the court's attention. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").

Contrary to Plaintiffs' assertion, Defendants' brief in support of their petition for certiorari is

not the smoking gun. Defendants argued there that approval of the settlement class is essential because individual litigation would be a nightmare. (*Sprint Communications Co. v. Smith*, Petition for a Writ of Certiorari, pp. 25-28.) Support for a *settlement* class is not inconsistent with Defendants' current position that class *litigation* would be a nightmare. Defendants are entitled to see classwide settlement, classwide litigation, and serial individual litigation as three distinct ways of resolving their dispute with neighboring property owners.

## B.    Rule 23(a) Requirements

Plaintiffs' ten-subclass, six-issue class is easily numerous enough[8] and arguably meets the commonality requirement[9] for class certification. The court determines, however, that the issues of typicality and adequacy merit further consideration.

### 1.    Typicality

Each named subclass representative's claim is typical "'if it arises from the same event or

---

[8]    "If the exact size of the class is unknown, [t]he court is entitled to make common sense assumptions in order to support a finding of numerosity." *Peterson v. H & R Block Tax Servs., Inc.*, 174 F.R.D. 78, 81 (N.D. Ill. 1997) (internal quotation marks and citations omitted). Averaging the differences in population density between urban, rural, and suburban areas, Plaintiffs estimate that there are roughly ten adjacent property owners along each linear mile. (Pltfs.' Class Mem., p. 10.) Using this figure, the smallest subclass would include nearly 3,500 Arkansas landowners, while the largest subclass would include more than 41,000 California landowners. (*Id.*) Although Plaintiffs have offered no information about the geographic dispersion of class members or the difficulty of simply identifying and joining class members, Defendants have not contested Plaintiffs' assertions with respect to the requirements of Rule 23(a)(1). (Pltfs.' Class Reply, p. 14.) The court will assume that the sheer size of the putative subclasses, even if easily identifiable and geographically concentrated, would make joinder impracticable.

[9]    "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Furthermore, "Plaintiffs need only show that there is . . . one question of law or fact common to the class to satisfy the commonality requirement." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). As set forth above, Plaintiffs have identified six issues for class treatment. (Pltfs.' Class Mot., pp. 2-3.) Question 3: "Whether Defendants profited and continue to profit from their continuing use of fiber optic cable for telecommunications system, which crosses the lands burdened by railroad rights-of-way," certainly meets the low *Arenson* threshold. In any event, commonality is a relatively low bar; a party necessarily meets it when he or she establishes the much stricter requirement for certification under Rule 23(b)(3), that common issues predominate over individual ones. *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 627 (3d Cir. 1996). Accordingly, the court defers any further consideration of this issue.

practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Defendants observe that courts presiding over similar disputes between landowners and telecommunications companies have found this requirement an obstacle to class certification. (Memorandum in Support of Defendants' Motion to Deny Class Certification (hereinafter, "Defs.' Class Mem."), pp. 16-17.)

In fact, typicality is a stumbling block even where, as in this case, classes are drawn on single-state lines. For instance, in a case on all fours with this one, Judge Crabb refused to certify a class of Wisconsin landowners who challenged MCI's installation of fiber optic cable in Union Pacific Railroad's right-of-way. *Chambers v. MCI WorldCom Network Servs., Inc.*, No. 00-348, slip op. at 1-2 (W.D. Wis. Mar. 2, 2001). Addressing the matter of typicality, the *Chambers* court observed:

> Even if the railroad is limited to railroad purposes for the entire length of the right-of-way, each class member must demonstrate that he or she possesses the underlying interest in the right-of-way. The proposed class members obtained their property interests through such a large number of instruments that plaintiffs are not typical of the class. Even if the acquisition documents can be grouped into [a] limited number of categories . . . proof of plaintiff's claims would not necessarily prove the claims of the proposed class members.

*Id.* at 19. *See also Calhoun v. Kansas City Southern*, No. 03-1511, slip op. at 7 (W.D. La. June 8, 2004) (denying certification to a single-state class of underlying and abutting landowners, the court observed that "[t]he named plaintiffs' claims cannot be said to be typical of the class without knowing the nature of the ownership interest of the named plaintiffs and of the putative class or the nature of the railroad[']s rights by way of grants of servitude."); *Regan v. Williams Communications, Inc.*, No. 01-779, slip op. at 5-6 (E.D. Cal. May 16, 2003) (finding that where a named plaintiff is likely to be preoccupied by unique defenses in his chain of title, a single-state class of underlying and adjacent landowners should be denied for lack of typicality).

In *Kirkman v. North Carolina R.R. Co.*, similarly, a federal court refused to certify a class of

all owners of North Carolina land subject to an easement held by a railroad on which Qwest Communications entered to install, maintain, or use fiber optic cable without consent or compensation. 220 F.R.D. 49, 50-51 (M.D. N.C. 2004). The *Kirkman* court observed:

> Because of the individual property interest questions involved in this lawsuit, the common issue of whether the Defendants had the right to install cable makes it difficult for any individual plaintiff to establish that his claims are typical of any other plaintiff's claims. Mr. Kirkman has provided no evidence that his deed is similar to the deeds held by other potential class members, or that there is a limited range of possible deed language.

*Id.* at 53. *See also Nudell v. Burlington Northern Santa Fe Ry. Co.*, No. 01-41, 2002 U.S. Dist. LEXIS 27702, *6 (D. N.D. Nov. 6, 2002) (finding that reducing the size of the proposed class from landowners in twelve states to those in just one did not resolve the underlying typicality problem of the need to resolve individual property-related issues in cases of this nature).

Defendants, in the instant case, have not demonstrated that the "proposed class members obtained their property interests through . . . a large number of instruments," *Chambers*, slip op. at 19, but it is not Defendants' burden to do so. Each putative named Plaintiff must provide "evidence that his deed is similar to the deeds held by other potential class members, or that there is a limited range of possible deed language," *Kirkman*, 220 F.R.D. at 53, and on this record, Plaintiffs simply have not done so. Instead, Plaintiffs confine their typicality argument to the statements, "A finding that commonality exists generally results in a finding of typicality, as well," and "Because the named plaintiffs here are a part of the respective sub-classes they seek to represent, possess the same general interest as other sub-class members, and have suffered the same injury as other class members, their claims are typical of the claims of members of the respective sub-class," without further exposition. (Pltfs.' Class Mem., pp. 11-12.) Plaintiffs need not develop an extensive factual record at this early stage of the litigation. Still, in light of the ample criticism of this failure in decisions that are no doubt familiar to the parties, the court finds it significant that Plaintiffs have not even alleged the typicality of the documents creating the Plaintiffs' property interests or the railroad companies' property interests.

Plaintiffs' allegations here compare unfavorably to the efforts of the plaintiffs in *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201 (E.D. Va. 2003), where a district court certified a class of servient landowners in two states in an action against a utility company and the telecommunications company to which the utility had leased its excess fiber optic capacity. The *Fisher* plaintiffs' theory was the same as the one presented here, except that a power company rather than a railroad had obtained the original rights-of-way in which fiber optic cable was laid. *Id.* at 214-22. The *Fisher* court observed:

> Over a 75 year span, from 1926 to 2001, [the utility company] obtained thousands of easements that burden the class land, some portion of which now underlie [the] fiber optic network. There is no question that class certification would be inappropriate if it were necessary to review each of the thousands of relevant easements grants individually to resolve the primary question in this action–whether a commercial fiber optic telecommunications network exceeds the scope of the easements. To obviate the need for any such individual review, the Plaintiffs have submitted two appendices that each separate the easement grants into nine categories based on the so-called "purpose clause" in each of 20 ostensibly representative easement forms.

*Id.* at 205. Based on this effort, the *Fisher* court was able to find that typicality was not an obstacle to class certification. *Id.* at 224.

It may well be that railroad company lawyers drafted many of the deeds by which individual landowners conveyed the rights-of-way at issue, and that the language of the thousands of relevant conveyances are standardized. If this is the case, one might infer that one landowner's interest in the disputed right-of-way is typical of his or her neighbors. The court, however, is unwilling to base its ruling on speculation and hunches. Absent Plaintiffs actually providing a digest of sample deeds, titles, and grants akin to that offered by the *Fisher* plaintiffs, a finding of typicality by this court, based only on the materials before it, would be just such a ruling.

Typicality is not a mere formality. It is essential to the correct and just resolution of a dispute that in prior iterations the Seventh Circuit has called "a nightmare of a class action." *Isaacs*, 261 F.3d at 682. A named plaintiff whose interest in the disputed right-of-way is created in some esoteric fashion or subject to some unique defense is unlikely to be able to assist the court in

developing the essential factual record to answer the question at the heart of this dispute:  Does an easement for limited railroad purposes include the right to install and operate fiber optic cable networks under the law of each of ten states?

The court concludes that in the absence of evidence that Plaintiffs McDaniel's and the Driskells' property interest in the disputed right-of-way is similar to that of the other Arkansas landowners they hope to represent or was created in a similar manner, Plaintiffs McDaniel and the Driskells have not established that their claims are typical of those of the subclass.  The court comes to the same conclusion regarding each of the other named Plaintiffs and the subclasses of landowners they seek to represent.

### 2.      Adequacy

The typicality requirement tends to merge with the adequacy requirement, as both Rule 23(a) requirements ask "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982).  The adequacy requirement, however, also "raises concerns about the competency of class counsel and conflicts of interest."  *Id.  See also Retired Chicago Police Ass'n*, 7 F.3d at 598.

Defendants argue that "[P]laintiffs' source documents and chains of title will differ from class members. . . .Taking those factors into account compels the conclusion that [P]laintiffs fail to meet the adequacy of representation test for the same reason they fail to meet the typicality test."  (Defs.' Class Mem., p. 19.)   In response, Plaintiffs note their counsels' competence, including an impressive litigation portfolio, but say exactly nothing about the adequacy of the named Plaintiffs

themselves.[10] (Pltfs.'s Class Mem., p. 12.)  The court concludes that Plaintiffs have not established their adequacy to represent the putative subclasses.

## C.    Rule 23(b) Requirements

Plaintiffs' failure to establish the typicality and adequacy requirements of Rule 23(a) is a sufficient basis on which to deny their motion for class certification.  Because the parties have briefed additional issues, the court notes its reservations with respect to Plaintiffs' motion under Rule 23(b) as well.  A party who establishes that the four Rule 23(a) requirements are met must also show that the proposed class action falls into one of three categories outlined in Rule 23(b).  Plaintiffs invoke Rule 23(b)(1)(A) and Rule 23(b)(3), but as discussed below, neither of those provisions fits well here.

### 1.    Rule 23(b)(1)(A) Class Certification

Rule 23(b)(1)(A) would permit class certification where, after showing that other requirements are met, Plaintiffs could also show that the prosecution of separate lawsuits by individual members of the putative class would create a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for" Defendants.  Plaintiffs here emphasize the network nature of the fiber optic cables in the disputed rights-of-way.  (Plaintiffs' Reply in Support of Motion for Class Certification on Limited Issues Pursuant to Rule 23(c)(4), (b)(1)(A) and (b)(3), FED. R. CIV. P. (hereinafter, "Pltfs.' Class Reply"), pp. 23-24.)  They warn that Defendants would be gravely prejudiced by having to face the landowners of the Arkansas, California, Florida, Illinois, Indiana, Missouri, Montana, Nevada, New Mexico, and Oregon in individual suits rather than in a single class action.  (*Id.*)  Plaintiffs' apparent

---

[10]    This may well be an oversight on the part of Plaintiffs, whose experienced counsel recognized that as a matter of law the adequacy inquiry is directed at both class counsel *and* named plaintiffs. (Pltfs.' Class Mem., p. 12.) Plaintiffs even begin the discussion of their attorneys' accolades with the introduction, "First," suggesting that there might have been a "Second," directed at their own adequacy, that was lost in the editing process. (*Id.*) Nonetheless, this briefing stretched into sur-replies and rejoinders, yet Plaintiffs never addressed the matter.

concern is that, should any court find that any piece of Defendants' interconnected network trespasses on any of thousands of parcels that could form the basis of an individual suit, the entire network will be disabled like a faulty string of Christmas lights.

Defendants note that the phrasing of Rule 23(b)(1)(A) implies that class certification is for the benefit of the party facing the class in litigation as opposed to the putative class members themselves. (Defs.' Class Reply, p. 28.) Some courts have, in fact, interpreted this language as allowing certification under Rule 23(b)(1)(A) only where the party facing the putative class requests certification. *See, e.g.*, *Corley v. Entergy Corp.*, 222 F.R.D. 316, 320 (E.D. Tex. 2004) (observing that "[a] defendant may, however, waive his or her right to the safeguards that Rule 23(b)(1)(A) establishes by contesting class certification," in denying plaintiffs' motion for class certification in a landowner/telecommunications/scope-of-easement case); *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 190 F.R.D. 422, 427 (S.D. Tex. 1999) (finding Rule 23(b)(1)(A) inapplicable when plaintiffs sought class certification in a Lanham Act case, but "defendants do not seek the protection of this section").

Even putting Defendants' motivations aside, the Advisory Committee Notes suggest that the circumstances here do not present the concerns that Rule 23(b)(1)(A) was designed to address. Those Notes identify "individual litigations of the rights and duties of riparian owners, or of landowners' rights and duties respecting a claimed nuisance" as circumstances in which "conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern [defendant's] conduct."

In this court's view, Defendants here do not face the sort of potential inconsistencies contemplated by this language. It may be that one court will declare a portion of Defendants' network a trespass to the property interests of a particular landowner and that another court, in a separate suit, will come to the opposite conclusion with respect to the first landowner's neighbor. Should this happen, Defendants are perfectly capable of paying trespass damages to one

landowner while simultaneously paying no damages at all to his neighbor. Plaintiffs' complaint requests compensatory and punitive damages as well as fees and costs–all monetary remedies that do not present the risk of incompatibility that Rule 23(b)(1)(A) seeks to avert. *See Rowell v. Voortman Cookies, Ltd.*, No. 02-681, 2005 WL 2266607, *4 (N.D. Ill. Sept. 14, 2005) ("Class certification pursuant to Rule 23(b)(1)(A) is questionable when only money damages are sought.") (citing *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 n.10 (9th Cir. 1976) ("Infrequently, if ever will [Rule 23(b)(1)(A) be satisfied] when the action is for money damages."); *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 n.10 (9th Cir. 1973) ("Whether an action for money damages can ever fall within Rule 23(b)(1)(A) has been the subject of much comment.")). Given the potentially varied ownership interests from one parcel to the next of neighboring putative class members and the railroad companies from whom Defendants leased rights-of-way, the just resolution of this dispute might require nonuniform damages awards along the disputed rights-of-way, congruent with the extent of any individual plaintiff's property interest.

This court is not alone in reaching this conclusion. In *Hallaba v. Worldcom Network Servs. Inc.*, 196 F.R.D. 630 (N.D. Okla. 2000), the court refused to certify a nationwide class of landowners presenting the same trespass and unjust enrichment theory as Plaintiffs here have articulated. In response to plaintiff's argument that the class was certifiable against the defendant telecommunications companies under Rule 23(b)(1)(A), the *Hallaba* court stated:

> The Court has already described the intensely factual and deed-specific nature of the inquiry necessary to determine if Defendants are trespassing. . . . This particularized inquiry means that the result for one plaintiff landowner would have very little impact on the result for a second plaintiff landowner, especially . . . if the railroad or pipeline obtained its interest in the right of way from that plaintiff (or his/her predecessor in interest) by an individual rather than form deed. Because the facts and law will differ from plaintiff landowner to plaintiff landowner, the adjudication for each such plaintiff landowner in this case will likely be unique and will pose no threat of inconsistent adjudications of the sort contemplated by Rule 23(b)(1)(A).

*Id.* at 644.

Plaintiffs do also ask the court to enjoin any further trespass, (Compl. ¶ 30), and the court

recognizes that as a practical matter, if one landowner sought to eject Defendants' fiber optic cables from his or her property, individual suits might present a risk to the viability of Defendants' network. Some authority indicates that not even this sort of risk supports a Rule 23(b)(1)(A) certification, however, so long as a defendant can comply with a court order granting injunctive relief on one parcel without violating some other court's order with respect to another parcel. *Corley*, 222 F.R.D. at 321 ("Even if a class member obtained a judgment precluding Defendants from transmitting . . . over his or her land, Defendants would not face a legally untenable situation. Rather, Defendants could either re-route the communications around that plaintiff's land or stop sending data over that line segment on the Network. . . . . Either way, Defendants would not be forced to follow one court order yet violate another court order.").

In any event, the court is not satisfied at this early stage of the litigation that Plaintiffs intend to primarily pursue this disruptive remedy. *See Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100, 107 (E.D. Va. 1980) (declining to certify a class under Rule 23(b)(1)(A) where the court concluded that plaintiffs' real goal was recovery of monetary damages). Although Plaintiffs mentioned the possibility that they might seek certification under Rule 23(b)(2) in their complaint, Plaintiffs have made no mention of that provision in their actual motion for class certification. That Plaintiffs seem to have dropped any attempt to certify the putative class under Rule 23(b)(2) bolsters the court's conclusion that Plaintiffs do not seek injunctive relief, or that they seek injunctive relief only as a fallback for the primary relief of monetary damages. *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) ("If Rule 23(b)(2) ever may be used when the plaintiff class demands compensatory or punitive damages, that step would be permissible only when monetary relief is incidental to the equitable remedy."). If, over the course of the litigation, this conclusion proves to be incorrect, the court would revisit this issue upon motion of either party.[11]

---

[11]     The court recognizes that other courts have certified classes under Rule 23(b)(1)(A) in similar property disputes arising by operation of the "Rails-to-Trails" Act, 16 U.S.C. § 1241, *et seq*, though plaintiffs sought only monetary damages. *See, e.g.*, *Lowers v. United States*, No. 99-
(continued...)

## 2.    Rule 23(b)(3) Class Certification

Plaintiffs urge, in the alternative, that certification is proper under Rule 23(b)(3).  (Pltfs.' Class Mem., p. 14.)  That Rule allows for class certification where, after establishing the Rule 23(a) requirements, Plaintiffs can also show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  With respect to certification under Rule 23(b)(3), the Advisory Committee observed that a court is entitled to capitalize on any economies of scale that might be available through class treatment, so long as these gains do not require the sacrifice of procedural fairness or create an unacceptable risk of an incorrect determination of the merits of the case:

> In the situations to which this subdivision relates, class-action treatment is not as clearly called for as in those described above, but it may nevertheless be convenient and desirable depending upon the particular facts. Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

Advisory Committee Notes on the 1966 Amendments to FED. R. CIV. P. 23.  The court turns to the predominance and superiority requirements imposed by Rule 23(b)(3).

### a.    Predominance

The Advisory Committee noted that "[i]t is only where this predominance exists that economies can be achieved by means of the class-action device."  Advisory Committee Notes on

---

[11](...continued)
90039, 2001 WL 1200869, *6 (S.D. Iowa May 2, 2001); *Hash v. United States*, No. 99-324, 2000 WL 1460801, *11 (D. Idaho July 7, 2000). Plaintiff asserts that these cases are on point, (Pltfs.' Class Mem., p. 13), but this court disagrees. In passing the Rails-to-Trails Act, Congress prevented abandoned railroad easements from reverting to the subservient and adjacent landowner. *Hash*, 2000 WL 1460801 at *1-2. Because a single act of Congress effected a taking of all the parcels constituting the abandoned right-of-way, individual lawsuits by individual landowners along the railroad corridor posed a risk of inconsistent judgments, if, for instance, two different juries concluded that this taking had occurred at two different times. *Id.* at *11; *Lowers*, 2001 WL 1200869 at *6 (following *Hash*). In the instant case, Plaintiffs have not shown that the conveyances from Plaintiffs of Plaintiffs' predecessors in interest to the Defendants' lessors occurred at the same time.

the 1966 Amendments to FED. R. CIV. P. 23. For reasons described earlier, individual issues here predominate over common issues. Individual issues relate to the strength of any particular Plaintiff-landowner's property interest in any particular parcel adjacent to or underlying a particular disputed railroad right-of-way, as compared with that of the particular entity from whom Defendant-telecommunications company leased access, as well as defenses available to Defendants as against any individual landowner. As Defendants urge, common questions that might otherwise merit class certification would be easily swamped by the massive undertaking of comparing and interpreting deeds and conveyances in potentially lengthy chains of title for each parcel along over 16,000 linear miles in ten geographically dispersed states. (Defs.' Reply, pp. 5-10.)

To address this issue, Plaintiffs have proposed separate subclasses for each of the ten states whose laws would be represented in this case. (Pltfs.' Class Mem., p. 14.) This proposal does bolster the case for predominance: The potential difficulty of determining which state's law applies to any particular chain of title is often cited as an obstacle to a finding of predominance in similar landowner/railroad-right-of-way disputes. *See, e.g.*, *Oxford v. Williams Cos.*, 137 F. Supp. 2d 756, 764 (E.D. Tex. 2001) ("In a multi-state class action, variations in state law may swamp any common issues."); *Hallaba v. Worldcom Network Servs. Inc.*, 196 F.R.D. 630, 640 (N.D. Okla. 2000) (finding the same for a proposed nationwide class). Even with subclasses divided on state lines, however, the massive individual issues related to actually applying the law to interpret each deed or conveyance for each disputed parcel remains. *See Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001) (denying certification of a national class of landowners against defendant railroad and telecommunications companies because of individual issues related to both law and fact).

Like the overwhelming number of courts to consider the matter, the court agrees with Defendants on this score. In denying certification of a single-state class alleging the same claims as those presented here, the lack of predominance (in addition to a threshold inability to identify the

class members) troubled a Mississippi district court for reasons that apply here, as well:

> [T]here are an abundance of individualized issues involved in determining the nature of the interest owned by the railroad in each parcel of land comprising the railroad corridor in question and ascertaining who owns any interest in the corridor not owned by the railroad in fee. These determinations alone–which go in the first instance only to the question whether a particular person even qualifies for class membership–would require individualized review of thousands of title documents containing differing and diverse conveyance language that would have to be analyzed according to the specific language used and applicable case law to ascertain the intention of the parties to the conveyances and the legal effect of the instruments. Beyond that, even if a person were found to qualify for class membership, defendants point out that there would remain issues of whether the claims of particular class members are barred by the passage of time or the prior trespass doctrine, which, again, involve highly individualized inquiries. For these reasons, this court, consistent with virtually every other court to have considered the availability of class certification in similar cases, concludes that plaintiffs' motion for class certification is due to be denied.

*Johnson v. Kansas City Southern*, 224 F.R.D. 382, 389 (S.D. Miss 2004) (citing more than a dozen cases). In remarking on an antitrust conspiracy before it, the Fifth Circuit observed that predominance (and the judicial economy that Rule 23(b)(3) class certification should promote) was lacking where resolution of a matter related to one plaintiff would not resolve that issue with respect to a second plaintiff without the expenditure of additional judicial resources. *See Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978) ("[C]onsideration should be given to whether the addition or subtraction of any of the plaintiffs to or from the class will have a substantial effect on the substance or quantity of evidence offered.").

A showing of predominance does not appear to be an insurmountable burden here. Plaintiffs might have shown that each putative class member's property interest in the disputed rights-of-way has a common source. Or Plaintiffs might have shown that Defendants' lessors' property interests arise from a common conveyance or a form deed. Under these or like circumstances, the court might have achieved some economies by litigation of a case of class members holding title under such common instruments as opposed to dealing with each parcel in

a separate suit.[12]  *See, e.g.*, *Fisher v. Virginia Elec. and Power Co.*, 217 F.R.D. 201, 205 (E.D. Va. 2003) (certifying a class in a similar dispute where plaintiffs showed that documents creating the right-of-way user's property interest in the disputed right-of-way, rather than varying from parcel to parcel, was one of only nine variations).  Plaintiffs, unfortunately, have not made any such effort. This court is unwilling to address Plaintiffs' causes of action on a class basis.[13]

As noted, Plaintiffs have attempted to this problem by invoking Rule 23(c)(4) as a path to certify a class for the limited purpose of resolving six issues related to the underlying dispute between the parties.[14]  (Pltfs.' Class Mem., p. 3.)  Rule 23(c)(4) states:  "When appropriate (A) an

---

[12]     Rule 23(b)(3) class actions have allowed courts to achieve significant judicial economies in Rails-to-Trails cases. In order to prevent fallow railroad rights-of-way from being declared abandoned under state law during a downswing in the once-booming railroad industry, the federal government enacted the National Trails System Act, allowing former lines to be converted to recreational uses rather than continued for railroad purposes. 16 U.S.C. § 1247(d). District courts have certified several Rule 23(b)(3) class actions to challenge the Act as a taking because a single federal act created the railroad companies' property interests in the recreational use of the disputed rights-of-way. *See, e.g.*, *Schmitt v. United States*, 203 F.R.D. 387, 402 (S.D. Ind. 2001) (certifying a class of 120 plaintiffs in two counties); *Bywaters v. United States*, 196 F.R.D. 458, 468-70 (E.D. Tex. 2000) (certifying a class of 500 plaintiffs in five counties); *Schneider v. United States*, 197 F.R.D. 397, 402 (D. Neb. 2000) (certifying a single-state class). In the absence of this common statutory source, courts facing Rails-to-Trails disputes may well have faced the same obstacles to class certification as are presented here.

[13]     Defendants also argue that individual defenses related to the passage of time and the statute of limitations would predominate over common issues, preventing class certification under Rule 23(b)(3). (Defs.' Class Reply, pp. 10-13.) Plaintiffs respond by arguing that Defendants' fiber optic cables would constitute a "continuing trespass" under state law and as such these individual defenses would be inapplicable. (Pltfs.' Class Mem., pp. 6-7.) The court finds that the individual issues related to the need for parcel-by-parcel interpretation of the applicable chain of title defeats predominance without engaging in the ten-state survey necessary to resolve this dispute.
        Defendants also argue that individual issues related to damages will predominate. (Def. Class Mem., pp. 14-15.) The court need not resolve this issue either, but observes that if class certification were otherwise appropriate, individual issues related to damages may not have precluded certification for purposes of a liability finding. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[I]f and when the defendants are determined to have violated the law separate proceedings of some character will be required to determine the entitlements of the individual class members to relief.").

[14]     Plaintiffs are perhaps not entirely consistent with regards to asking for class certification on limited issues rather than at the level of the cause of action as a whole. For instance,
(continued...)

action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

As a threshold matter, Defendants argue that even when the party moving for certification requests issue classes under Rule 23(c)(4)(A), the court must look for the predominance of common issues over individual issues in the cause of action as a whole rather than engaging in the issue-specific predominance analysis endorsed by Plaintiffs. (Defs.' Reply, pp. 29-31.) In an often-cited footnote, the Fifth Circuit chastised a district court for parsing one element of fraud from another in order to establish predominance:

> A district court cannot manufacture predominance through the nimble use of subdivision (c)(4). The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial. . . . Reading rule 23(c)(4) as allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended.

*Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996). Indeed, all courts to consider the matter agree that the "predominance requirement is met by examining *each cause of action* independently of one another." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003). There is, nevertheless, at least some authority for an "issue-specific predominance analysis" under Rule 23. *See id.* (citing *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996)

---

[14](...continued)
Plaintiffs argue at one point, "In this case, the predominant issues are whether one or more of the [D]efendants intentionally entered onto the lands of the [P]laintiffs and members of the subclasses to install, maintain and operate their network without privilege and whether the [D]efendants were thereby unjustly enriched." (Pltfs.' Mem., p. 14.) Phrased this way, it sounds as if Plaintiffs are asking the court to certify the entire trespass cause of action (and its derivative unjust enrichment claim) for class treatment. If this is so, the court has already stated above its conclusion that individual issues predominate over common ones preventing certification of the class under Rule 23(b)(3).

(observing in a products liability case that "Even if common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues." (citations omitted)); *Simon v. Philip Morris, Inc.,* 200 F.R.D. 21, 28-31 (E.D.N.Y. 2001) (Weinstein, J.); *Emig v. Am. Tobacco Co.,* 184 F.R.D. 379, 395 (D. Kan.1998); 6 NEWBERG ON CLASS ACTIONS § 18:7 ("Even cases which might not satisfy the predominance test when the case is viewed as a whole may sometimes be certified as a class limited to selected issues that are common, under the authority of Rule 23(c)(4)."); 7B Wright & Miller FEDERAL PRACTICE AND PROCEDURE § 1790 ("Subdivision (c)(4) is particularly helpful in enabling courts to restructure complex cases to meet the other requirements for maintaining a class action. . . . The theory of Rule 23(c)(4)(A) is that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member.")). *See also Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167 n.12 (2d Cir 2001) (in a Title VI decision, noting the circuit split between the Fifth Circuit's interpretation of the interplay between Rule 23(c)(4) and the Rule 23(b)(3) predominance analysis and the Ninth Circuit's interpretation of the same).

The Seventh Circuit has yet to weigh in on this issue, though its recent decisions encourage district courts to employ Rule 23(c)(4) to the fullest extent in considering class certification under Rule 23(b)(3). *See, e.g., In re: Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005) (vacating class certification, but observing that a classwide determination of whether an employer had a policy of constructively discharging its employees would be more efficient than redetermining that question repeatedly in individual hearings to determine why any particular employee quit); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual

damages issues . . . [including] (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class."). Moreover, Judge Grady of this court, in a recent decision denying plaintiffs' request for certification of a class on limited issues pursuant to Rule 23(c)(4), nevertheless rejected the *Castano* footnote and agreed that predominance should be analyzed at the level of the issues isolated pursuant to Rule 23(c)(4)(A). *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, No. 93-7452, 2005 WL 497782 (N.D. Ill. Mar. 1, 2005).

However wise it may be, in appropriate circumstances, to permit class counsel to separate issues from one another under Rule 23(c)(4)(A), the court is not inclined to certify the issue subclasses here for two reasons. The first relates to the breadth of the six issues upon which Plaintiffs request certification vis-a-vis the underlying cause of action. These six issues are so broad that it is not immediately apparent what additional issues Plaintiffs would leave for non-class treatment aside from each putative class member's eligibility for a share of the unitary measure of damages. More importantly, however, as explained below, common issues do not predominate over individual ones even when subclasses are defined by the six issues identified by Plaintiffs.

### I. Whether Defendants have [entered] and continue to intentionally enter upon lands burdened by railroad rights-of-way by installing, operating, and maintaining fiber optic cable on the land without authority

Plaintiffs assert that this issue includes four sub-issues: (1) whether the Defendants entered the disputed land together or separately; (2) whether Defendants entered the disputed land at or below the surface; (3) whether Defendants entered the disputed land intentionally or accidently; and (4) whether Defendants continue to remain in the disputed land. (Pltfs.' Reply, pp. 18-19.) Whatever the validity or commonality of these sub-issues, in order to determine whether

Defendants' entry was "without authority," the court would have to determine the relative strength of the putative class member and the Defendants' lessor for any given parcel and for each parcel in each of the ten state subclasses. *See, e.g.*, *Diaz v. Home Fed. Sav. & Loan Ass'n of Elgin*, 337 Ill. App. 3d 722, 726, 786 N.E.2d 1033, 1039 (2d Dist. 2002); *Nature Conservancy v. Kolb*, 853 S.W.2d 864, 869 (Ark. 1993). This parcel-by-parcel inquiry into Defendants' lack of authority would entail individual inquiries on such a scale as to easily overwhelm the common issues Plaintiffs identify in this question and the five that follow.

### ii. Whether Defendants have any legal privilege allowing them to intentionally enter upon, remain, or use the lands

Plaintiffs apparently use "privilege" to ask whether or not there is some reason in public policy, divorced from any property interest Defendants might have, for Defendants to be lawfully present in the disputed land.[15] (Pltfs.' Reply, p. 19.) As an example, Plaintiffs cite *Loftus v. Mingo*, a case asking whether a plaintiff can maintain an action for trespass against an active duty police officer. 158 Ill. App. 3d 733, 511 N.E.2d 2003 (4th Dist. 1987). Defendants argue that they have never alleged that they had a privilege to enter the disputed land; rather they believe their use of the land for telecommunications purposes is within the scope of their lessors' property interest.

(Surreply Memorandum in Support of Defendants' Motion to Deny Class Certification and Opposing Plaintiffs' Motion for Class Certification (hereinafter, "Defs.' Class Sur-Reply"), p. 3.) To the extent that Defendants stake their claim to the disputed land on a property interest–the railroad right-of-way in easement or fee simple–and not a privilege rooted in public policy, the court concludes that this issue is not common to the putative class.

---

[15] What Plaintiffs freely admit they have done is to split the common law definition of trespass, "entry onto another's land without legal privilege to do so," (Pltfs.'s Rejoinder, p. 7), into two separate issues for the purpose of determining class certification. The court suspects that this is the sort of maneuvering disapproved in the *Castano* footnote.

### iii. Whether Defendants profited and continue to profit from their continuing use of fiber optic cable for telecommunications system, which crosses the lands burdened by railroad rights-of-way

The question of whether Defendants profited and continue to profit from the use of the fiber optic network is common to each putative class members' claim, but also completely uncontested by Defendants.  (Defs.'  Class Sur-Reply, p. 4.)  If each putative class member brought a separate suit against Defendants, no judicial resources would be expended on the common issue of whether or not Defendants' fiber optic network is profitable.  Nor are any economies achieved with respect to this issue by trying all the putative class members' claims together in a single class action.

### iv. The time period within which any putative subclass member may bring actions for continuing trespass or quasi-contract/unjust enrichment under the laws of their respective states

Plaintiffs have alleged a continuing trespass, which according to Plaintiffs would allow each putative class member to recover damages for the duration of the applicable statute of limitations. (Pltfs.' Reply, p. 20.)  Assuming the continuing trespass theory is applicable to the facts of this case in the states whose law are at issue in this controversy,[16] this issue is common.  Nonetheless, the court concludes that the individual issues related to the resolution of the first question above are necessarily intertwined with this one and predominate over common issues.

### v. Whether defendants are liable to any members of each subclass for actual damages and punitive damages for continuing trespass or quasi-contract/unjust enrichment under the laws of their respective states

The court concludes that this question is no more than a restatement of the first question

---

[16]    Defendants' review of the applicable state laws presents the argument that the alleged trespass might not be treated as continuing by all jurisdictions, in which case individual issues related to the application of the statute of limitations and the discovery rule would predominate.  (Defs.' Reply, pp. 10-13.)

above. Defendants are only liable for damages to the extent that they have trespassed against putative class members. The determination of whether this trespass has occurred requires the highly individuated inquiry outlined above.

> **vi.** **The unitary measure of damages, if any, payable to any members of each subclass for continuing trespass or quasi-contract/unjust enrichment under the laws of their respective states**

Absent the ability to certify a class on any issue related to Defendants' potential liability, the court is reluctant to impose the pressure of class certification on Defendants with respect to the question of damages. While a unitary measure of damages may be definitionally common to all putative class members, it presupposes liability, which as the court has determined includes too many individuated inquiries to justify Rule 23(b)(3) class certification.

> **b.** **Superiority**

Even if Plaintiffs could show that common issues predominated over individual issues in the limited issues class they seek to certify, it is not at all clear that a class action is the superior way to resolve the underlying dispute between the parties. The Seventh Circuit in *Isaacs v. Sprint Corp.* did not give class treatment a ringing endorsement when it called a similar dispute "a nightmare of a class action." 261 F.3d 679, 682 (7th Cir. 2001). Admittedly, Plaintiffs have pared down the scale of the *Isaacs* class from fifty states to ten and constrained the issues for class certification to something less than the entire cause of action, but nonetheless thorny individual issues remain while economies are elusive.

Plaintiffs argue that if the court does not certify the putative class, putative class members are unlikely to prosecute individual suits because the cost of litigation is high and the likely recovery is not cost justified. (Pltfs.' Class Mem., p. 14.) The court recognizes that where the small claims problem exists, class actions may be particularly appropriate, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual

suits, but zero individual suits, as only a lunatic or a fanatic sues for $30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative-no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied-to no litigation at all."). The court, however, is not convinced that the instant dispute is in fact a small claims dispute.[17] The settlement agreement tossed out in *Smith v. Sprint Communications. Co.*, 387 F.3d 612 (7th Cir. 2004), the same agreement Plaintiffs refer to here as a "sweetheart deal," promised some putative class members more than $10,000 per linear mile. (Second Amended and Restated Settlement Agreement Between a Settlement Class of Right of Way Claimants, and Sprint, Qwest, Level 3, and WilTel, p. 24.) A settlement class of property owners in several states along a right-of-way owned by the Norfolk Southern Railway collected up to $6,000 per linear mile and a percentage of the revenues raised from leasing the disputed rights-of-way for fiber optic cable use. *Uhl v. Thoroughbred Tech. & Telecommunications., Inc.*, 309 F.3d 978, 982 (7th Cir. 2002). While the court recognizes that not all members of the putative class own a full mile of property along the disputed rights-of-way, the financial incentive to bring an individual suit is not insignificant.

## D.    Mis-joinder of non-Illinois Plaintiffs

The foregoing analysis demonstrates that in addition to denying Plaintiffs' motion for class certification, it is appropriate for the court to drop all named Plaintiffs save Plaintiffs Randy C. and Diane J. Snyder from this action. FED. R. CIV. P. 21 provides, "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Because Rule 21 does not include its own standard for mis-joinder, courts

---

[17]    Furthermore, in denying certification to this class, the court does not mean to imply that a class action could never be certified for litigation in this sort of dispute in this circuit. It is possible that a class action of landowners underlying or adjacent to a single railroad company's right-of-way would be able to convince a court that the similarity between the railroad's acquisition documents from parcel to parcel would obviate the need for some of the arguably unmanageable individual inquiries. If a railroad used the same conveyance language for all property along a particular line, litigating rail line by rail line might be a productive way of using the class mechanism to efficiently resolve this longstanding dispute without sacrificing accuracy or fairness.

use the permissive joinder standards contained in FED. R. CIV. P. 20(a). *See, e.g.*, *Byers v. Illinois State Police*, No. 99-8105, 2000 WL 1808558, *1 (N.D. Ill. Dec. 6, 2000). Under that Rule, plaintiffs may be joined where their claims "aris[e] out of the same transaction or occurrences and if any questions of law or fact common to all these persons will arise in the action." FED. R. CIV. P. 20(a).

In requesting subclass certification along state lines, Plaintiffs effectively concede that there are no common questions of law between the named Plaintiffs whose property disputes are subject to ten different sets of state laws. The preceding predominance analysis also demonstrates that Plaintiffs' disputes do not present significant common questions of fact. Because the court is not satisfied that any Plaintiff will be prejudiced by going it alone[18] and the court gains no economies by addressing their disputes together, the court exercises its discretion to drop all non-Illinois Plaintiffs from this matter.

## CONCLUSION

Plaintiffs' motion for class certification is denied. The court finds that Plaintiffs have not met their burden of establishing that a ten-subclass, six-issue class meets the requirements of typicality and adequacy under Rule 23(a) and could be certified under Rule 23(b)(1)(A) or 23(b)(3). The court, further, exercises its discretion to drop all non-Illinois Plaintiffs from this action.[19]

ENTER:

---

[18]     Rather, as the forgoing class certification analysis demonstrates, each Plaintiff has a better chance of obtaining a favorable judgment on his or her own than proceeding together from forum to forum in search of a court that will be sympathetic to their class aspirations. As noted, the amount in controversy is not insignificant for a Plaintiff holding a significant frontage along a disputed right-of-way.
        For a Plaintiff set on classwide relief, the applicable precedents suggest that at best some other federal court will certify a single statewide class for litigation. If this is so, such a Plaintiff is best off returning to his or her state of residence and moving for certification of a single class of that geographically limited scope.

[19]     Defendants also moved to dismiss all non-Illinois Plaintiffs for lack of subject matter jurisdiction or improper venue pursuant to the local action doctrine. That motion, dealing with a highly unsettled area of law, is denied as moot.

Dated: May 23, 2006

REBECCA R. PALLMEYER
United States District Judge