UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DON WAYNE MCDANIEL, et. al. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 05 C 1008 |
| | ) | |
| v. | ) | Hon. Rebecca R. Pallmeyer |
| | ) | |
| QWEST COMMUNICATIONS | ) | Magistrate Judge Keys |
| CORPORATION, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS', DIANE J. SNYDER'S AND RANDY C. SNYDER'S,
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
<u>SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY</u>**

Plaintiffs Diane J. and Randy C. Snyder submit this Memorandum of Law in support of their Motion For Summary Judgment pursuant to Rule 56, F. R. Civ. P., on the issue of liability against the defendant, Sprint Communications Company, L.P. ("Sprint"), reserving the issues of appropriate injunctive relief and the amount of actual and punitive damages for trial.

**I.      Standards For the Grant of Summary Judgment**

A party may move for summary judgment on any claim or part of claim, and the court shall grant judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56(a), F.R. Civ. P. (December 1, 2010). *See, also, Neil v. Zell*, ___F.Supp.2d___, 2010 WL 4670895, at *1 (N. D. Ill. November 9, 2010). The plaintiffs are plainly entitled to a grant of summary judgment in their favor on the issue of liability on both their continuing trespass and unjust enrichment claims for Sprint's commercial occupation of their land without authority or compensation.

## II. Causes of Action Pled in Plaintiffs' Complaint

The plaintiffs have requested actual and punitive damages and injunctive relief for continuing trespass and unjust enrichment by Sprint for willfully and maliciously installing and continuing to maintain and operate a commercial fiber optic cable on the railroad right of way occupying the fee interest that the plaintiffs claim in land.[1]

In Illinois, a trespass is the unauthorized entry onto another's land without legal privilege to do so. *Loftus v. Mingo*, 158 Ill. App. 3d 733, 110 Ill. Dec. 368 (Ill. App. 4th Dist. 1987). Unjust enrichment is the receipt of a benefit by one party which it would be inequitable for that party to retain in the absence of compensation. *See, CIT Commun. Finan. Corp. v. Wes-Tech Automation Solutions, LLC*, 2010 WL 3274164, at *11&12 (N.D. Ill. November 17, 2010).

## III. The Plaintiffs Own the Fee Interest in the Land Burdened By The Currently Occupying Railroad, Which Obtained Only An Easement For Right Of Way Purposes

The original builder and occupier of the right of way at issue was the Mississippi & Rock River Junction Railroad Company ("MRR"), chartered by a Special Act of the Illinois Legislature dated February 15, 1851. *See* 1851 Spec. Laws, p. 254, Exhibit 1.[2]

---

[1] Plaintiffs have provided a title abstract and deeds within their possession and control to Sprint, and there should be no dispute that the plaintiffs can trace their interest in the parcel adjoining/encumbered by the railroad right of way at issue back to an 1840's U.S. Government patent. All the property descriptions in the *mesne* conveyances are bounded by the right of way, which under Illinois law is owned to the "centerline" by the adjoining fee owner if the right of way is only an easement. "Although the measurement set forth in the deed brings the line only to the side of the highway, the title will still be carried to the center of it, . . ." *Henderson v. Hatterman*, 146 Ill. 555, 564-565, 34 N.E. 1041 ( Ill. 1893); *See, also, Application of Buchanon*, 6 Ill. App. 2d 694, 697, 286 N.E. 2d 580, 582 (Ill. App. 1st Dist. 1972). The rationale for this broadly recognized rule is that it make no sense for the original granter of the right of way interest who later conveyed the adjoining parcel's fee interest to have intended to retain the fee interest in a strip of land that does not benefit him. *See, generally,* Description With Reference To Highway As Carrying Title To Center Or Side Of Highway, 49 A.L.R. 2d 982 (1956).

[2] The parties have stipulated that the occupation rights were initially acquired by an 1854 condemnation. The record of those proceedings states that the rights were acquired by the MRR. *See, infra.*

Like most, if not all, of the various railroad charters issued in the same era, the MRR was granted the right to acquire land rights for railroad purposes by purchase and condemnation. However, *unlike* many railroad special laws dating from the mid-19th Century, the procedures, intended purposes and extent to which the MRR could condemn estates in land is contained with the four corners of its charter, rather than incorporating by reference any of the general condemnation laws for the State of Illinois.

Specifically, the MRR charter provides that any condemnation must be for railroad purposes and conducted by a circuit or county judge who was required to appoint three commissioners for the purposes of assessing damages relating to the lands "to be appropriated and occupied by the corporation for the purposes aforesaid." *Id.,* §7. Thereafter, depending on any dissatisfaction by any party in the result of the assessment, a circuit court was required to hold a hearing to resolve the matter with a record of the assessors' report being made. *Id.*

After the payment of damages, if any, the MRR would become "seized and possessed of the lands and property and entitled to use the same for *the purposes aforesaid*." *Id.* (emphasis added). Under Illinois law, to become "seized and possessed" through a condemnation was to receive only an easement over the land at issue for the duration of its intended use, and not the fee. *Tacoma Safety Deposit Co. v. City of Chicago*, 247 Ill. 192, 198-200, 93 N.E. 153 (Ill. 1910).

The MRR acquired the right of way at issue through a mass condemnation proceeding conducted in 1854 in Whiteside County, Illinois. Stipulation, ¶12. The parties have stipulated that it appears as though the specific parcel at issue from which the Plaintiffs' property was later carved was parcel "8" on the record of the proceedings. *See*

3

Stipulation, ¶13 & Ex. F. The report of the proceedings does not refer to any general condemnation law of the State of Illinois or any estate in land being taken, and the proceedings recorded therein exactly track the procedure strictly prescribed in the MRR charter. *Id.*, *passim*.

Under Illinois law, the terms of specific laws control over the terms of general laws. *See, Depart. Of Cent. Mgmt. Serv. v. American Fed. Of State, Cty and Mun. Workers*, 284 Ill. App. 3d 963, 673 N.E. 2d 447 (Ill. App. 4th Dist. 1996). Further, powers of eminent domain being in derogation of common rights, charters granting such rights must be strictly construed. *Tacoma, supra; Reed v. Ohio & M. Ry. Co.*, 126 Ill. 48, 52, 17 N.E. 807 (1888). Accordingly, under Illinois law, the MRR obtained only an easement over the land for railroad purposes, to end when the estate is no longer in use for those purposes. There is no record that the MRR petitioned to take a fee simple interest, and to do so would have been *ultra vires*.

Undeniably, this result can differ from other condemnation outcomes for different railroads chartered under different special laws, many of which seem to have specified the estate to be taken in the target land if a "fee" was intended and had incorporated by reference one or more of general condemnation laws of Illinois. Also, some railroads had the right to choose under which "competing" law they wished to proceed.

For example, in contrast with the MRR charter, the charter of the Ohio & Mississippi Railroad Company ("O & M"), 1851 Special Laws, p. 89, attached as Exhibit 2, provided that the railroad could take "grants and conveyances of any and all interests and estates [in land] and to them and to their successors or assigns *in fee, or otherwise*." *Id.,* §4 (emphasis added). To condemn such interests, the O & M was directed to proceed

4

"in the manner provided for in 'an Act to provide for a general system of railroad incorporations,' approved November 5th, 1849." *Id.* Reviewing a dispute regarding the estate taken by the O & M in an 1853 condemnation in *Marathon Oil Co. v. Heath, et al*, 358 F.2d 34 (7th Cir. 1966), the Seventh Circuit noted that the O & M could have proceeded under *either* the 1849 Act or an Illinois statute entitled "An Act to Amend the Law Condemning Right of Way for Purposes of Internal Improvement" passed June 22, 1852. *Id.*, at 36 (attached as Exhibit 3).[3] The condemnation record specifically mentioned the 1849 Act, but the parties stipulated that the proceedings actually were conducted under the 1852 Act. *Id.,* at 36 n.4.

The Seventh Circuit concluded that the condemnation petition requesting that the land owners be required to make and deliver a "conveyance or release in fee" to the O & M demonstrated "an intention on the part of the railroad to take an interest in the lands condemned *commensurate with the power granted by its charter*." *Id.,* at 36 (emphasis added). Had the O & M opted to proceed under the 1849 act, by contrast, it would have obtained only a right of way interest expiring upon abandonment, and not a fee simple interest, even though the statute provides for the passing of a "fee." *See, generally, Abrams v. Royse*, 211 Ill App. 3d 283, 569 N.E. 2d 1329 (Ill App. 4th Dist. 1991).

For the sake of additional comparison, the charter of the Carthage & Burlington Railroad Company, March 8, 1867, 2 Laws 1867, p. 622, Exhibit 4, provides that the company "may take and condemn [land] to the use of said company, by virtue of any law of this state, . . ." *Id*., at §2. The charter of the Peoria and Rock Island Railway Company, March 7, 1867, 2 Laws 1867, p. 659, Exhibit 5, provides that the company

---

[3] Both the 1849 and 1852 statutes were "general" laws. *Austin v. Belleville & Illinoistown Railroad Co.,* 19 Ill. 310 (Ill. 1857).

5

could condemn property "under the provisions of 'an act to incorporate the Mississippi Railroad Company' approved February 15, 1852, or under any of the laws of this state, now in force . . ." and that those rights of way would be taken in "fee simple." *Id.*, at §§16 & 17. This multiplicity of choices and outcomes for differently chartered railroads, each of which had different powers, capital requirements and other obligations, persisted until 1869, well after the condemnation of the subject right of way, and the next year the taking of a fee interest for railroad tracks was rendered unconstitutional. [4]

The condition and the history of uses on the right of way at issue also are consistent with the taking of a right of way for limited uses and not a fee simple interest. The parcel itself is a narrow ribbon only fifty feet wide. Stipulation, ¶14. Neither historically nor currently has it held any structures other than track related materials. Stipulation, ¶14. The Union Pacific has paid taxes on its interest under the Illinois statewide railroad tax provisions as "tracks" and "operating property" which taxes arise from the occupation of by the railroad without regard to whether it owns a fee interest in the right of way, as opposed to non-operating property that carries a different tax rate. Stipulation, ¶¶16 & 17; *See, generally, Mobile & O. R. Co. v. State Tax Commission*, 374 Ill. 75, 28 N.E. 100 (Ill. 1949); *People v. Ill. N. Ry.*, 248 Ill. 532, 94 N.E. 37 (Ill. 1911).

Neither Sprint nor its predecessor had a good faith basis to rely on any assumption or assertion from the railroad as to the nature and quality of the railroad's title to the right

---

[4] In 1869 the Illinois Legislature amended and repealed portions of the 1852 Act and provided that the revised act shall apply to "all proceedings for the condemnation of lands by any railroad company heretofore incorporated, or which any hereafter be incorporated, . . ." 1869 Sess. Laws, p. 373, Exhibit 6. The next year, a new Constitution went into effect, which provided that the fee of the land taken for railroad tracks without the consent of the owners shall remain with such owners. *See*, Illinois Constitution 1870, Art. 2, §13. The parcel owner could use the entire property for any purpose not interfering with the railroad purposes. *Chicago & E I Ry. Co. v. Clapp,* 201 Ill. 418, 425, 66 N.E. 223, 224 (Ill. 1903). For any condemnation commenced before the effective date of the new Constitution, the proceedings were governed by the railroad's charter. *Peoria & Rock Island Ry. Co. v. Birkett*, 62 Ill. 332 (Ill. 1872).

of way, and plaintiffs have not found any historical statement from the railroad that it had sought and obtained a fee simple interest. Quite the contrary.

Sprint has stipulated to the authenticity of the easement agreement between the current railroad's immediate predecessor and Sprint's predecessor, both of which were sophisticated corporations. Stipulation, ¶6, Ex. D. CONFIDENTIAL INFORMATION AND IS SEALED PURSUANT TO PROTECTIVE ORDER DATED AUGUST 2, 2010. *Id.,* ¶25.

In conclusion, the MRR, within the limits of its charter and the strictly construed eminent domain procedures laid out within the four corners of the charter, took only an easement for railroad purposes in the property owned by the plaintiffs.

**IV. The Power To Control Non-Railroad Uses On the Right Of Way Remained With The Plaintiffs as Fee Owners of the Parcel Burdened by the Right Of Way.**

The owner of a servient estate holds the power to exclude or permit all additional, non-interfering uses on land burdened by roadway easements and is entitled to pursue an action for a trespass. *See, Benno v. Central Lake County Joint Action Water* Agency, 242 Ill. App. 3d 306, 609 N.E. 2d 1056 (Ill. App. 2d Dist. 1993)(water main under a highway easement); *Brinkley v. Brinkley*, 174 Ill. App. 3d 705, 529 N.E. 2d 70 (Ill. App. 5th Dist. 1988)(natural gas pipeline under a road); *Lewis v. Illinois Bell Tel. Co.*, 107 Ill. App. 3d 97, 437 N.E. 2d 349 (Ill. App. 4th Dist. 1982)(underground telephone cable under a highway easement); *Mitchell v. Chicago, B. & Q. Ry. Co.*, 265 Ill. 300, 307, 106 N.E. 833, 836 (Ill. 1914)(a railroad is an additional servitude on a street easement); citing *Postal Telegraph Cable Co. v. Easton*, 170 Ill. 513, 49 N.E. 365 (Ill. 1897)(the addition of a telegraph line on a highway is an additional servitude for which permission must be

7

sought from the fee owner); *DeKalb Cty Telephone Co. v. Dutton,* 228 Ill. 178, 81 N.E. 838 (Ill. 1907)(telephone lines and poles on city street are ancillary to the uses of a street easement and are therefore an additional servitude); *Spalding v. Macomb & W.I. Ry. Co.*, 225 Ill. 585, 80 N.E. 327 (Ill. 1907)(construction of a railway road on a city street is an additional burden on the owner of a fee); *Rock Island & P. Ry. Co.*, 204 Ill. 488, 68 N.E. 549 (Ill. 1903)(same);*Carpenter v. Capital Elec. Co.* 178 Ill. 29, 52 N.E. 973 (Ill. 1899)(electric poles and wires an additional servitude on a private alley easement).

In *Cleveland, C., C. & St. Louis Ry. Co v. Central Illinois Public Service Co.*, 380 Ill. 130, 43 N.E. 2d 993 (Ill. 1942), the Illinois Supreme Court was faced with an analogous case to the one before this court. A railroad acquired rights to a strip of land by private conveyance to build a track bed. After the conveyance, the railroad built and operated the right of way for passenger and freight traffic. Years later, the successors in interest to the parcel on which the right of way was imposed granted rights to an electric company to permit the placing of a tower and transmission line that would overhang the right of way. *Id.*, 380 Ill. at 131-134. The railroad sued to enjoin the construction and later for a mandatory injunction to remove the line. The Supreme Court determined that the railroad had obtained only an easement in the right of way, and that while the rights of the railroad extended beyond the surface of the land, those rights were not impinged as long as the cable did not actually interfere with the operation of the railroad. *Id.*, 380 Ill. at 136-137.[5]

Similarly, plaintiffs here do not claim that the railroad's interest ends abruptly at the thin skin of the soil. However, the railroad's rights are not to be determined

---

[5] The Court noted its prior holding in *Eldorado, Marion & Southwestern Ry. Co. v. Sims*, 228 Ill. 9, 81 N.E. 782 (1907) wherein it upheld the principle that the owner of a servient estate could drive tunnels under a railroad right of way to mine and remove coal.

subjectively by what the railroad wants to control. Rather, the test is an objective determination of the railroad's railroad operations, and whether the fee owners' possession and use of the right of way would conflict with those operations.[6] In this case, there is no dispute that if Sprint had come to the plaintiffs or their predecessors begging authority to install an underground fiber optic cable, the railroad could not have lawfully barred access to the place where the cable was deeply buried. Plaintiffs need not have shared possession of the surface of the right of way with the railroad to extend rights to Sprint for its underground operations.

Nevertheless, Sprint's predecessor in interest did not seek permission from the plaintiffs' predecessor before entering the land at issue, and indeed never sought to ascertain proper title to the property, CONFIDENTIAL INFORMATION AND IS SEALED PURSUANT TO PROTECTIVE ORDER DATED AUGUST 2, 2010. Stipulation, ¶¶8 & 9. They have also stipulated that the fiber optic cable lies four feet below the surface of the right of way, and have stipulated to the accuracy of the construction drawings showing the location of the fiber optic cable at a substantial lateral distance from the tracks on the right of way. Stipulation, ¶¶20 & 22. Finally, the easement agreement governing Sprint's access to the right of way provides in pertinent part that CONFIDENTIAL INFORMATION AND IS SEALED PURSUANT TO PROTECTIVE ORDER DATED AUGUST 2, 2010. Stipulation, ¶6, Ex. D at ¶5.7.

---

[6] *See, Abens v. Chicago, Burlington & Quincy R. Co.*, 388 Ill. 261, 57 N.E. 2d 883 (1944)(action in ejectment for temporary uses pending completion of track construction that would occupy the entire easement, distinguishing *Public Service* and *Sims*). "[I]f plaintiffs [in ejectment] enter upon tract A, they would be in possession of the same area as defendants but for an entirely different purpose. . . .The possession of the owner to the coal tunnels beneath the surface or his possession of the space above the surface for transmission lines in noway conflicts with the railroad company's right to the exclusive possession of the area where the railroad is operated." *Id.*, 388 Ill. at 267-269, 57 N.E.2d at 886-887.

The railroad itself has no record that it or its predecessors had ever had telephone or telegraph wires along this segment of its right of way prior to the present situation, and the parties have stipulated that the current railroad's predecessor only obtained rights to use the cable as part of its compensation for allowing defendant's predecessor to use the right of way. Stipulation, ¶¶15 & 21. This was certainly not a contract intended to provide services for railroad operations, but a pure easement agreement providing compensation to the railroad for land rights that the railroad was not even certain it possessed. Thus, by all evidence, the installation of commercial cable on the right of way is a non-interfering use separate from the operation of the railroad.

On the basis of these uncontested facts, under Illinois law, the plaintiffs hold the right to permit – or exclude – the presence of Sprint on the right of way, rather than the railroad. Since approval was not sought, nor was a right of access obtained by condemnation, Sprint is a trespasser on the plaintiffs' property.

### V. Sprint's Presence and Active Use Of the Fiber Optic Cable For Commercial Purposes Is a Continuing Trespass.

A property owner can sue for entry and continuing presence on his property which accrued within five years prior to filing of a complaint. *Rosenthal v. City of Crystal Lake,* 171 Ill. App. 3d 428, 441, 525 N.E. 2d 1176, 1183 (Ill. App. 2d Dist. 1988)(storm sewer 7 ½ feet underground installed fifty years earlier). If the trespass is continuing, any person in possession of the land at any time during its continuance may maintain an action for trespass even if the structures involved seem of a permanent character. *Id.*, 171 Ill. App. 3d, 435-436, 525 N.E. 2d at 1181. See also, *Neely v. Coffey*, 81 Ill. 2d 439, 410 N.E. 2d 839 (Ill. 1980)(sewer line under a highway easement is a continuing trespass); *Lake Shore Building Co. v. City of Chicago*, 207 Ill. App. 244 (Ill.

App. 1st Dist. 1917)(construction of a water tunnel 50 feet underground); *Carpenter, supra* (electric wires and poles); *Burrell v. American Telephone & Telegraph Co.*, 224 Ill. 266 (Ill. 1906)(telephone poles and lines in daily use).

### VI. Plaintiffs Are Entitled to Some Relief Under Either A Trespass Or An Unjust Enrichment Theory.

This is not the point in these proceedings to debate a proper damage valuation or the form of appropriate injunctive relief to which the plaintiffs may be entitled. However, plaintiffs think it beneficial to assert here their legal right to such relief.

#### A. Plaintiffs May Obtain An Injunction Ordering Sprint To Abate The Occupation

A trespass on realty is considered to result in injury entitling a plaintiff to a decree that the trespasser vacate the premises. *Falejczyk v. Meo*, 31 Ill. App. 2d 372, 176 N.E. 2d 10, 12 (Ill. App. 1st Dist. 1961). In *McMillin v. Economics Lab., Inc.,* 127 N.E. 2d 982, 468 N.E. 2d 982 (Ill. App. 2d Dist. 1984), a landowner brought a trespass action against a company that 12 years previously had constructed a railroad spur on the plaintiffs' property despite knowledge that the linking railroad did not have land rights to extend to them for the spur, as a result of which the landowners obtained a mandatory injunction ordering the trespasser to abate the trespass. *See, also, generally, Benno, supra* (cause of action stated for injunction ordering the removal of a water main from a highway easement); *Brinkley, supra* (natural gas pipeline ordered removed from under a private road)[7]; *Lewis, supra* (forcible entry and detainer action against telephone company that installed telephone cable under a ditch which was part of a highway easement).

---

[7] Although the injunction was granted by the trial court, the Appellate Court vacated it on the procedural grounds that it was awarded to the defendant who had not filed a counterclaim, even though the issuance was otherwise "proper" under the law and facts of the case. *Brinkley*, 529 N.E. 2d at 76.

11

### B. Plaintiffs Are Also Entitled To An Award Of Some Damages Until The Trespass Is Abated

A mere trespass on realty entitles the owner to at least nominal damages. *Falejczyk, supra*. In addition, where a person occupying improved or unimproved land of another is a trespasser, the law implies both the creation of a tenancy and liability for reasonable rent. *Franks v. Shemneck*, 61 Ill. App. 2d 325, 210 N.E. 2d 210 (Ill. App. 1st Dist. 1965)(abstract); *Cauley v. Northern Trust*, 315 Ill. App. 323-4, 43 N.E. 147, 154 (Ill. App. 1st Dist. 1942)(occupation of property without permission implies an obligation to pay rent).

Actions for economic losses caused by intentional torts also remain a viable option for an Illinois landowner whose rights are transgressed upon. *See, e.g., CIT Commun, supra* (conversion and unjust enrichment); *Brinkley, supra*; *Rosenthal, supra; McMillin, supra; Burns Philp Food, Inc. v. Cavalea Cont. Frt., Inc.*, 135 F. 3d 526, 529-30 (7th Cir. 1998)(trespass); *Schatz v. Abbott Laboratories*, 51 Ill. 2d 143, 281 N.E. 2d 323 (Ill. 1972)(lost profits caused by nuisance).

Sprint has occupied and used the plaintiffs' land for commercial purposes for the entire period between the point when the plaintiffs acquired the land in 2004 and the present. Stipulation, ¶20. Sprint is accountable for fair rental value of such occupation while it still remains *in situ*. We know that there is an economic value to Sprint's occupation of the land: we have the contract between Sprint's predecessor and the railroad's predecessor CONFIDENTIAL INFORMATION AND IS SEALED PURSUANT TO PROTECTIVE ORDER DATED AUGUST 2, 2010. Stipulation, ¶6.

Although this is not the point to be debating the form and amount of potential relief, it certainly will be before the Court that Sprint has occupied the plaintiffs' property

in a revenue-generating, commercial enterprise without paying for that occupation. That is as unjust as if Sprint occupied premises for its executive headquarters without buying the property or paying the owner a fair rent or had tapped into a competitor's cable without paying for that right. The plaintiffs are entitled to be paid when businesses want to use their property, simple as that.

Sprint certainly could not lawfully avoid an obligation to the rightful owners, and the uncontested facts demonstrate that Sprint hardly acted innocently. Punitive damages are available if the Court or jury were to determine that the actions by Sprint or its predecessor were willful and wanton. *Rodrian v. Seiber*, 194 Ill. App. 3d 504, 509-510, 551 N.E. 26 772, 775 (Ill. App. 5th Dist. 1990). Plaintiffs submit that this is such a case, but will reserve further evidence on the point until trial.

### VII. Conclusion

On the basis of the foregoing, it is clear that plaintiffs are entitled to judgment as a matter of law in their favor and against Sprint. If this Court so rules, the appropriate next step is to determine an appropriate means and timetable for Sprint to abate the trespass by removing its fiber optic cable. Thereafter, the parties can address the Court on the time period for assessment of damages.

Respectfully submitted,

**SUSMAN HEFFNER & HURST LLP**

/s/ William T. Gotfryd
William T. Gotfryd, of Counsel
Two First National Plaza
Suite 600
Chicago, Illinois  60603
(312) 346-3466
**Attorney for Plaintiffs**

**Of Counsel**

Arthur T. Susman
SUSMAN HEFFNER & HURST LLP
Two First National Plaza
Suite 600
Chicago, Illinois 60603
(312) 346-3466

Thomas J. Potter
LUDENS POTTER BURCH MELTON & CALVO
409 North Cherry Street
Morrison, Illinois 61270
(815) 772-2161

Dated: December 9, 2010