

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DON WAYNE McDANIEL *et al.*,        )
                                     )        Civil Action No. 05 C 1008
              Plaintiffs,            )        Hon. Rebecca R. Pallmeyer
                                     )        Magistrate Judge Keys
                                     )
v.                                   )
                                     )
                                     )
QWEST COMMUNICATIONS                 )
CORPORATION *et al.*,                )
                                     )
              Defendants.            )

**ORDER AWARDING ATTORNEYS' FEES AND REIMBURSING EXPENSES
TO SETTLEMENT CLASS COUNSEL AND APPROVING PAYMENT OF INCENTIVE
AWARDS TO SETTLEMENT CLASS REPRESENTATIVES**

The Settlement Class Representatives in this class action have moved the court under

Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2) for an award of attorneys' fees and

reimbursement of expenses to Settlement Class Counsel. They also have moved for the approval

of their incentive awards. The motion follows settlement of this class action. The settlement

resolves claims by Illinois landowners against some of the country's largest telecommunications

companies arising out of the installation, operation, and maintenance of fiber-optic

telecommunications facilities on land that the class members claimed to own and control.

The total aggregate value of the Illinois Class Settlement Agreement is estimated at

approximately $14,000,000. The pending motion requests a fee award and reimbursement of

expenses in the amount of $3,543,000, or approximately 24.4% of the aggregate settlement fund

value. The incentive awards to the eleven Settlement Class Representatives total $22,375,

1

comprising joint and individual payments of $2,275 or $1,100.

Under Rule 23(h) (3), the court makes the following findings of fact and conclusions of law:

# Findings of Fact

This class-action settlement resolves a property-rights dispute arising out of the installation of fiber-optic cable on railroad rights of way by the Settling Defendants — Sprint Communications Company L.P.; Qwest Communications Company, LLC; Williams Communications LLC; and Level 3 Communications, Inc., Level 3 Communications, LLC, and Level 3 Telecom Holdings, Inc. The claims resolved by the Settlement affect approximately 4,500 parcels of land in Illinois, covering 977 miles of rights of way throughout the state.

This case has a lengthy history alone and as part of a body of cases pursued in many courts throughout the United States for over a decade. Beginning in the late 1990s, lawsuits were filed nationwide against the defendants in this litigation and other telecommunications companies. The lawsuits alleged that the defendants had installed fiber-optic cable and other telecommunications facilities on railroad rightsofway under agreements with the occupying railroads, without undertaking to ascertain the owner of the dominant property interests in the rightsofway. The lawsuits further alleged that the plaintiffs, as owners of the fee interest in the right-of-way land, had a superior property interest to that of the railroads, which, they further alleged, possessed only a limited easement for railroad purposes that did not include third-party telecommunications activities. The plaintiffs claimed that the defendants' occupation of the rightsofway without consent and payment constituted, *inter alia,*a trespass and also gave rise to claims for unjust enrichment.

2

Over the years, the parties have vigorously litigated the right-of-way cases, including in Illinois. This case — following denial of litigation-class certification —was pursued to a bench trial. Illinois state courts certified nationwide and multi-state litigation classes against Sprint and Qwest, respectively, further litigation of which was stayed pending settlement efforts. Other litigation proceeded in additional courts, resulting in the certification of litigation classes in Idaho federal district court and Kansas state court.

Those efforts, over several years, culminated in 46 state-by-state settlement agreements, including the Illinois State Class Settlement Agreement. On August 26, 2011, the court held a Fairness Hearing on the Settlement. At its conclusion, the court found that it was fair, reasonable, and adequate, and entered an order finally approving it.

Settlement Class Counsel estimate that, under the Settlement Agreement, $10,000,000 in cash benefits are available for Illinois class members to claim. Administrative costs — including those incurred in creating and updating a sophisticated database to identify class members, issuing notice, and implementing the Settlement — are to be separately paid by the Settling Defendants and are estimated at an additional $684,000. The agreed-to attorney's fees and non-taxable costs of $3,453,000,[1] and the requested class representatives' incentive awards of $22,375— both of which are also to be separately paid by the Setting Defendants —bring the total gross value of the Settlement to more than $14 million.

---

[1] The Settlement Agreement provides in pertinent part: "Settlement Class Counsel may seek from the court a cash award of fees and expenses from the Settling Defendants, in an amount not to exceed the Maximum Attorneys' Fee Award, to which the Settling Defendants will not object." (Settlement Agreement § II.E.1.) The Settlement Agreement defines the Maximum Attorneys' Fee Award as $3,453,000. (Settlement Agreement at 4 (definitions).)

Beginning on May 6, 2011, the claims administrator mailed notices to over 17,400 current and prior property owners along railroad rights of way in Illinois containing telecommunications facilities installed by the Settling Defendants, and opened a settlement call center and website. In addition, beginning on May 24, 2011, a summary notice was published in Illinois newspapers and magazines likely to reach a very large percentage of the Illinois class members. The notice advised that Settlement Class Counsel would ask the court to award attorneys' fees and expenses in the amount of $3,453,000 and incentive awards to the Settlement Class Representatives. The notice further advised that the court would hold a Fairness Hearing at 10:00 a.m. on August 26, 2011, at which time the court would hear the fee-and-expense and incentive-award motions.

Following mailing and publication of the class notice, no class members objected to the proposed award of attorneys' fees and expenses or incentive payment. No class members appeared at the Fairness Hearing to object to either proposed award.

## Conclusions of Law

Rule 23(h) (1) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by . . . the parties' agreement." The Rule further provides that "[a] claim for an award must be made by motion under Rule 54(d) (2)," notice of which must be directed to class members in a reasonable manner. Finally, the Rule requires the court to "find the facts and state its legal conclusions under Rule 52(a)." Fed. R. Civ. P. 23(h) (1) and (3). In turn, Rule 54(d)(2) requires a claim for fees to be made by motion, and specifies its timing and content, including, in relevant part, "the grounds entitling the movant

to the award" and "the amount sought."Notice of the fee-and-expense and incentive-award motion in satisfaction of Rule 23(h) (1) was provided in the mailed and published class notice and on the website.

The United States Supreme Court long ago recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common-fund doctrine is based on the notion that all "those who have benefited from litigation should share its costs." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988); *see also In re Synthroid Mktg. Litig.*, 325 F.3d 974, 977 (7th Cir. 2003) ("*Synthroid II*") (each class member "must bear their portion of the legal expense").

As then District Judge Williams wrote: "The purpose of allowing fees to be paid from a common fund is to spread the costs of the litigation proportionately among the class members benefited by the lawsuit." *Gaskill v. Gordon*, 942 F. Supp. 382, 385 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998). Here, Settlement Class Counsel secured a significant benefit for all class members. A common-fund fee award is therefore appropriate.

Courts generally use one of two methods to award fees in a class action: the percentage-of-the-fund method or the lodestar-multiplier method. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991) ("The decision of whether to use a percentage method remains in the discretion of the district court."). Under the percentage approach, the court grants a percentage of the recovery as the fee. *Gaskill v. Gordon,* 160 F.3d 361, 363 (7th Cir. 1998); *see, e.g., Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) (affirming award of attorneys' fee under percentage method). Using the lodestar approach, the court derives the fee by multiplying the

5

attorney and professional hours devoted to the case by the timekeepers' individual billing rates, and then applies a risk multiplier to take into account the risk of non-payment. *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 183 n.3 (3d Cir. 2005).

Regardless of which approach the court employs, the goal in the Seventh Circuit is to mimic "the market" in determining a requested fee. In so doing, courts consider what counsel and the class would likely have negotiated at the outset of the case, had they been in a position to do so:

> The object in awarding a reasonable attorneys fee . . . is to simulate the market. . . . The Class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis with a similar outcome, for a paying client.

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("*Continental I*").

The Seventh Circuit recognizes that an important factor in setting a fee is the risk counsel undertook; in assessing the risk, the court should employ an *ex ante* approach, focusing on the risk at the outset of the case. *See Taubenfeld*, 415 F.3d at 599. Risk cannot be overlooked, for it is considerable even in a relatively simple class case. As Judge Posner recognized, "[t]he lawyers for the class receive no fee if the suit fails." *Continental I*, 962 F.2d at 569. Counsel must be properly compensated for risk, or "systematic undercompensation" will undermine the viability of worthwhile class action cases like this one. *Id.* at 569. Many courts have found the percentage-of-recovery method provides a good emulation of the real-world market value of attorneys' services provided on a contingent basis. *See, e.g., Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("[A] percentage-of-the-fund approach more accurately reflects the economics of litigation practice.").

6

Counsel's request for an award of attorneys' fees and expenses of $3,453,000 is well justified under the percentage approach. Indeed, the evidence shows that, under the percentage approach, the market would have set a *higher* fee, equivalent to at least one-third of the recovery. As decisions of the Seventh Circuit have confirmed, the real-world market range for contingent fee cases is 33% to 40%. *Gaskill*, 160 F.3d at 362-63 (affirming award of 38% of recovery); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986)(observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial). Furthermore, the requested fee here includes the reimbursement of litigation expenses, which in most cases are the subject of an additional award. *See* Conte, *Attorney Fee Awards*, § 2.8 at 38 (Cum. Supp. May 2002) ("The prevailing view is that expenses are awarded in addition to the fee percentage.").

Given all these considerations, the 24.4% "percentage" fee requested here is well within — and indeed below — the market rate for high-risk, contingent-fee cases like this one. Settlement Class Counsel include very experienced class-action counsel with substantial experience in similar litigation. They faced substantial risks over an extended period in proceeding with this and other related litigation that led to this settlement. Opposing them were skilled, determined, and highly effective defense counsel. The fee requested is reasonable in view of the risks, quality of work, and the result for the settlement class.[2]

---

[2] Additionally, although the court has followed the percentage method, the motion is supported by declarations of Settlement Class Counsel describing their contributions to the litigation and settlement of the class claims, and setting forth lodestar information. Without engaging in a full-blown lodestar analysis, the submitted lodestar information readily confirms the reasonableness of the fee-and-expense award made under the percentage approach.

The number and quality of objections are often deemed indicative of the class's reaction to a request for attorneys' fees. *In re Rite-Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). Here, the settlement notice, mailed to approximately 17,400 potential class members, explained that Settlement Class Counsel would request a fee of $3,453,000. There were no objections to the requested attorneys' fee award. An absence of objection is a "rare phenomenon," *In re Rite Aid*, 396 F.3d at 305, and "indicates the appropriateness of the [fee] request," *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*, Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993); *In re Sequoia Sys., Inc. Sec. Litig.*, No. 92-11431-WD and Civ. A. No. 93-11331-WD, 1993 WL 616694, at *1 (D. Mass. Sept. 10, 1993) (finding "influential" the absence of any class member's objection to fee request of one-third).

In consideration of all the foregoing, the court approves the requested award of $3,453,000 in attorneys' fees and reimbursement of expenses to Settlement Class Counsel. Consistent with the terms of the Settlement Agreement, the court orders that "the Settling Defendants shall deposit any attorneys' fee award approved by the court, which shall not exceed the Maximum Attorneys' Fee Award, into an interest-bearing escrow account at US Bank in New York, no later than ten (10) days after the date on which the Order and Judgment becomes Final." (Settlement Agreement § II.E.2.)[3]

The Settlement Agreement also provides, and the Settlement Class Representatives have moved, for the following incentive awards for service as class representatives: Diane J. Snyder

---

[3] Under the Settlement, "Final" means: "with respect to an order or judgment, that no timely appeals have been taken or that all appeals or other rights of review have been exhausted and that the order or judgment has not been vacated, reversed, or modified as a result." Settlement at 4.

8

and Randy C. Snyder – $2,725 jointly; Willaredt Acres, Inc. – $2,725; Judy Boren – $2,725; James Becherer – $2,725; Tri-County Feedmill – $2,725; Brent B. Bauer – $2,725; T. E. McKenna Inc. – $1,100; Wayne Smith – $2,725; Scott Sim, d/b/a S & T Automotive Corp. – $1,100; and Sabre Group, LLC – $1,100.

The Seventh Circuit has endorsed incentive awards as a means of inducing an individual to participate in expanded litigation. *Continental I*, 962 F.2d at 571; *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, No. 00-584-DRH, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) (award to each named plaintiff); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving class representative award in ERISA case); *Follansbeev. Discover Fin. Servs., Inc.*, No. 99-3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) ("this Court recognizes the importance of incentive awards for class representatives"); *Cook v. McCarron*, No. 92-7042 and No. 95-828, 1997 WL 47448, at *19 (N.D. Ill. Jun. 30, 1997) (Manning, J.) (approving class-representative award).

Here, the Settlement Class Representatives took substantial risks to pursue litigation on behalf of thousands of other Illinois landowners, placing questions relating to the title of their property at issue for the benefit of their fellow settlement class members. This also justifies the payment of an award to reward their service.

The amounts requested here are modest. They compare favorably to incentive awards made by other courts within this Circuit. *See, e.g., Williams v. Rohm & Haas Pension Plan*,No. 4:04-CV-0078-SEB-WGH, 2010 WL 4723725, at *2 (S.D. Ind. Nov. 12, 2010) ($5,000 award); *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ($3,000 award). As with the requested award of attorneys' fees and expenses, no

9

settlement class member has objected to the requested incentive payments, and they are hereby approved.

Finally, the Parties are expected to proceed pursuant to the mediation/arbitration agreement — signed by all but two attorneys involved in this case — concerning allocation of the attorneys' fees and reimbursement of expenses awarded herein.[4] Should disputes remain after the conclusion of the mediation process, the court anticipates appointment of Wayne R. Andersen as a Special Master pursuant to FED. R. CIV. P. 53 to make a report and recommendation concerning those disputes. The court will take up this issue at the next status conference, presently scheduled for October 14, 2011 at 10:00 A.M.

Dated: _August 29, 2011

The Honorable Rebecca R. Pallmeyer
United States District Judge

---

[4] Any questions raised by any Counsel regarding whether Counsel and the mediators agreed to modify any of the procedures set forth in this agreement are to be brought to the mediators for resolution in the first instance.

10